UNITED STATES BANKRUPTCY COURT
FOR SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| IN RE: § | |
| § | Case No. 15-35530-H5-7 |
| BLUEWATER INDUSTRIES, LP, § | |
| § | Chapter 7 |
| Debtor § | |
| § | |

**TRUSTEE'S MOTION TO APPROVE COMPROMISE WITH
<u>PARKER-HANNAFIN CORPORATION</u>**
**(Related to Adv. Nos. 17-03424 and 17-03289)**

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU.  IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE.  IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY.  YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU.  YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED.  IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU.  IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

**To the Honorable Karen K. Brown,
United States Bankruptcy Judge:**

Ronald J. Sommers, chapter 7 trustee (the "Trustee") for the Bankruptcy Estate of Bluewater Industries, L.P. ("Bluewater"), files this motion seeking approval of a compromise with Parker-Hannafin Corporation ("Parker") and in support would show the Court as follows:

<u>Summary</u>

1.  The Trustee has reached a proposed compromise with Parker regarding two pending adversary proceedings related to the prepetition failure of an undersea electrical umbilical manufactured by Parker and installed by Bluewater.  Under the terms of the proposed

1

settlement, Parker will pay the Trustee the sum of $2.8 million in exchange for a full release of all claims against Parker and the dismissal with prejudice of Bluewater's pending adversary proceedings against Parker.

### Jurisdiction, Venue, and Constitutional Authority

2. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (C), and (O).

3. Venue is proper in this District pursuant to 28 U.S.C. § 1408.

4. The Court has constitutional authority to enter a final order regarding this matter. The approval of a compromise by a bankruptcy court is an essential bankruptcy matter and triggers the "public rights" exception.

### Factual Background

5. The factual recitation below are solely those of the Trustee and not necessarily agreed to by Parker or any other party. To the extent a conflict exists between the compromise as described in this motion and the Settlement Agreement and Release attached as **Exhibit A** (the "Agreement"), the parties to this settlement intend for the Agreement to control.

6. Prior to its bankruptcy filing, Bluewater served as a general contractor for oil and gas companies, particularly for ATP Oil & Gas Corporation ("ATP"). Sometime prior to 2011, ATP engaged Bluewater as general contractor for the construction of an undersea pipeline known as the Clipper Project.

7. The Clipper Project included the installation of a subsea umbilical (the "Umbilical") to provide both electrical and hydraulic connections between the wells on the floor of the Gulf of Mexico and the platform located some miles away. The Umbilical was designed and manufactured by Parker.

8. After many delays caused by ATP's failing financial condition and subsequent chapter 11 filing, Bluewater finally completed the Clipper Project in early 2013, with the first production from the wells occurring in mid-March 2013. However, approximately three weeks after the first production began, the electrical connections in the Umbilical abruptly failed. Bluewater, ATP, and Parker conducted a series of investigations and tests, but they were unable to either restore the electrical connection or to determine the cause of the failure.

9. ATP subsequently sold its operating assets, including the Clipper pipeline, to Bennu Oil & Gas, LLC ("Bennu"). Bennu filed a complaint against Bluewater for its damages arising from the failure of the electrical portion of the Umbilical, initiating Adversary No. 14-03001, pending in ATP's bankruptcy case, Case No. 12-36187 (the "ATP Adversary"). In its complaing, Bennu asserted, among other things, that the Umbilical had failed because of a manufacturing defect and that Bluewater was liable for the resulting damages under its contract with ATP, which had been assigned to Bennu. Bluewater filed counterclaims against Bennu for unpaid invoices related to construction of the Clipper Project. Bluewater also filed a third-party claim against Parker as the manufacturer of the Umbilical.

10. During the course of the ATP Adversary, Bluewater and Parker reached an agreement that Bluewater's claims against Parker would be essentially abated until after the trial of the claims between Bluewater and Bennu.[1] As part of that agreement, Parker was not required to participate in discovery and was not bound by the outcome of the dispute between Bluewater and Bennu.

---

[1] Although the parties agreement, which was approved by the court in the ATP Adversary, was somewhat unclear, it has been subsequently treated as a severance of the claims between Bluewater and Parker from the claims between Bluewater and Bennu. After the ATP Adversary was reopened (as described in paragraph 12 below), the claims between Parker and Bluewater were moved to a separate adversary proceeding—Adversary No. 17-03289. For purposes of this motion, the term "ATP Adversary" includes this separate adversary proceeding.

11. After a lengthy trial, the court in the ATP Adversary issued a judgment in favor of Bennu, finding, among other things, that the Umbilical's failure was due to a manufacturing defect (the "Bennu Judgment"). Although the Bennu Judgment also awarded Bluewater a substantial amount under its contract, the result was that Bluewater was liable to Bennu for a net amount of over $13 million. Bluewater lacked the financial resources to either appeal or pay the judgment and filed for protection under chapter 7 on October 20, 2015.

12. After his appointment, the Trustee reviewed the Bennu Judgment and determined that it was in the best interests of Bluewater's Bankruptcy Estate to pursue the claims against Parker that had been abated. However, this presented a number of legal challenges. First, Parker had filed a motion for summary judgment before reaching the agreement to abate Bluewater's claims against it. The parties agreed that Bluewater's answer to that motion would not be due until after the Bennu Judgment was entered. However, when the time came for that answer to be filed, Bluewater lacked funds to pay its counsel and failed to file an answer. Despite this, the court in the ATP Adversary did not rule on Parker's motion for summary judgment, but instead closed the ATP Adversary without a ruling. Thus, when the Trustee moved to re-open the ATP Adversary, Parker took the position that the court should rule on its motion for summary judgment without allowing the Trustee to file a response. The court agreed with Parker and ruled that the Trustee would not be allowed to respond to Parker's motion.

13. Another legal challenge was presented by the terms and conditions that Parker asserted were part of its contract with Bluewater. Those terms and conditions contained language that Parker has interpreted to require Bluewater to return the Umbilical to Parker's facility in order to trigger Parker's obligations under its warranty. The warranty itself also poses

4

a challenge because it purports to limit Parker's liability to the cost of replacing or repairing the Umbilical, which would be only a fraction of the damages awarded to Bennu against Bluewater.

14.  Additionally, the court in the ATP Adversary denied the Trustee's motion to amend its third-party claims against Parker.  The Trustee's counsel had identified additional claims that, in light of the entry of the Bennu Judgment, could be brought against Parker.  In order to preserve those claims, the Trustee filed a complaint against Parker in this Court, initiating Adversary No. 17-03424 (the "Bluewater Adversary").

15.  Given the procedural complexity of the proceedings and the magnitude of Bluewater's claims against Parker, the parties agreed to mediate their disputes.  The initial mediation did not produce a settlement, but after a second mediation, the Trustee and Parker reached a resolution of all disputes, the terms of which are reflected in the Agreement.

## Relief Requested

16.  The Trustee requests that the Court approve the proposed compromise as set out in the Agreement.

## Legal Authority for Relief Requested

17.  A compromise must meet the standards set out in *Protective Committee for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414 (1968).  Under Rule 99019 of the Federal Rules of Bankruptcy Procedure, the decision to approve the compromise of a controversy with within the sound discretion of the Court, but the compromise must be "fair and equitable."  *See In re Aweco, Inc.,* 725 F.2d 293, 297 (5th Cir.), *cert. denied*, 496 U.S. 880 (1997); *In re Cajun Elec. Power Corp.*, 119 F.3d 349, 355 (5th Cir. 1997).  The Court should "made a well-informed decision, 'comparing the terms of the compromise with the likely

rewards of litigation'" *In re Cajun Elec. Power Corp.*, 119 F3d at 356 (citing *In re Jackson Brewing Co.*, 624 F.2d 599, 602 (5th Cir. 1980).

18. To determine whether a proposed compromise is fair and equitable, the Court should consider the following factors:

(1) the probabilities of success should the claim be litigated;

(2) the estimated complexity, expense, and likely duration of the litigation;

(3) the difficulties of collecting any judgment that might be obtained; and

(4) all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise.

*TMT Trailer*, 390, U.S. at 424. Consideration of the wisdom of the proposed compromise should include "the paramount interest of creditors with proper deference to their reasonable views" and whether the compromise arose from an arms-length negotiation. *In re Foster Mortgage Corp.* 68 F.3d 914, 917-18 (5th Cir. 1996).

19 Before accepting a compromise, a chapter 7 trustee must reach "an informed judgment, after diligent investigation, as to whether it would be prudent to eliminate the inherent risks, delays and expense of prolonged litigation in an uncertain cause." *In re Mailman Steam Carpet Cleaning Corp.*, 212 F.3d 632, 635 (1st Cir. 2000) (citing *In re Thompson*, 965 F.2d 1136, 1145 (1st Cir. 1992). The Court does not substitute its own judgment for the trustee's, but instead reviewed all the issues and determines "whether the settlement falls below the lowest point in the range of reasonableness." *In re W.T. Grant Co.*, 699 F.2d 599, 609 (2d Cir. 1983) (citing *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir.), *cert. denied sub nom. Benson v. Newman*, 409 U.S. 1039 (1972).

20. The Trustee believes that the proposed compromise with Parker is in the best interests of the creditors of Bluewater's Bankruptcy Estate.

21. <u>Probability of Success</u>. The Trustee believes that the facts and relevant law, especially in light of the findings of manufacturing defect in the Bennu Judgment, strongly support Bluewater's claims against Parker in both the ATP Adversary and the Bluewater Adversary. However, in order to prevail, the Trustee would have to defeat Parker's defenses based on the purported limitations on available relief under Parker's warranty. This legal hurdle, coupled with the procedural difficulties posed by the ruling of the court in the ATP Adversary that has prevented the Trustee from responding to Parker's pending motion for summary judgment, must be taken into consideration. It should also be noted that under Bluewater's agreement with Parker, trial of Bluewater's claims that were raised in the ATP Adversary are to be tried in U.S. District Court, potentially to a jury. While the Trustee believes that he would ultimately prevail at trial on the claims raised in both the ATP Adversary and the Bluewater Adversary, the usual inherent risk that any litigation carries is slightly higher in this case. As a result, the Trustee cannot predict with certainty the outcome of the litigation and believes that this factor favors settlement.

22. <u>Estimated Complexity, Expense, and Likely Duration of Litigation</u>. The litigation of the Trustee's claims against Parker would involve a complex set of both facts and legal issues. In order to fully understand the facts surrounding the failure of the Umbilical and the determination of the cause of that failure, the finder of fact will need to grasp certain principles of physics and the properties of electrical conductors. On the legal side, the issues raised by Parker's defenses under its warranty and the Trustee's arguments against those defenses will

require a complicated legal analysis, as will the Trustee's claims against Parker in the Bluewater Adversary. Thus, the complexity component of this factor favors settlement.

23. The expense component of this factor is not a concern in this litigation. The Trustee has retained counsel, with the approval of the Court, to pursue Bluewater's various claims against Parker under a purely contingent fee arrangement. Accordingly, this component neither supports or weighs against settlement.

24. The final component of this factor—the likely duration of litigation—supports settlement of the claims against Parker. Because the ATP Adversary is, by agreement, to be tried in U.S. District Court, the Trustee cannot predict when the matter would be tried. However, it is unlikely that it would be earlier than mid-2018. Considering the magnitude of the amounts at stake, the Trustee has to assume that Parker would appeal an adverse judgment, which could push a final resolution out for another year or more.

25. <u>Difficulties Collecting a Judgment</u>. The Trustee believes that Parker is a large, financially stable global corporation, with significant assets in the United States. Therefore, the Trustee does not believe that he would have significant difficulty collection a judgment against Parker, once that judgment becomes final. Thus, this factor does not weigh in favor of settlement.

26. <u>Other Factors</u>. The compromise proposed by the Trustee represents a significant recovery to Bluewater's Bankruptcy Estate on claims that present a number of material issues. The Trustee believes that the benefits of the proposed compromise outweigh any countervailing concerns and that the compromise is in the best interests of the Bankruptcy Estate.

WHEREFORE, the Trustee requests that the Court enter an order approving the proposed compromise with Parker and granting the Trustee such other and further relief as the Court deems just and proper.

Dated:  January 9, 2018

Respectfully submitted,

/s/ *Elizabeth M. Guffy*
David E. Harrell, Jr.
TBN 00793905
Elizabeth M. Guffy
TBN 08592525
Kurt Lance Krolikowski
TBN 24074548
LOCKE LORD LLP
600 Travis, Suite 2800
Houston, Texas  77002
Telephone:  713-226-1200
Facsimile:  713-223-3717
E-mail:  dharrell@lockelord.com
            eguffy@lockelord.com
            kkrolikowski@lockelord.com

**ATTORNEYS FOR RONALD J. SOMMERS, CHAPTER 7 TRUSTEE FOR BLUEWATER INDUSTRIES, L.P.**

### Certificate of Service

I hereby certify that on January 9, 2018, a true and correct copy of the foregoing motion was served electronically via the Court's ECF system on all parties registered to receive such notice and was by first class mail, postage prepaid, on the parties listed in the attached service list.

Elizabeth M. Guffy

9